George Hajati, pro se
28 Glenview Drive
Cromwell, Ct. 06416

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
Hartford Division

FEB 23 2023 AM10:41
FILED-USDC-CT-HARTFORD

George Hajati, pro se
   Claimant,

    - against -

United States of America; Williams
Barr, former US Attorney General;
Merrick Garland, current US Attorney;
Michale Carvajal, former Director of
the BOP; Collette Peters, current
Director of the BOP; Radam S.
Spaulding, current Warden; H. Rich
and Magan Vargeson, Case Managers;
Kisten Moran, US Probation Officer;
David T. Huang, AUSA; Alvin W.
Thompson, District Judge; Robert N.
Chatigny, District Judge, et. al. -
"all agents of the United States"
in their individuals and/or official
capacities
   Defendants,

_____/

Civ. No. _____
[Complaint For Damages]

Demand For Jury Trial

PREAMBLE AND SUMMARY

   1. George Hajati, Claimant, pro se (Hereinafter, "Mr. Hajati"),
hereby respectfully brings this civil complaint against the United
States of America and its agencies pursuant to the Federal Tort
Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. after having properly
exhausting the required administrative remedy to do so. Put
differently, on March 9, 2022, Mr. Hajati submitted an administrative
claim on a standard form 95-claim for damages, injury, or death to
the U.S. Department of Justice (DOJ), Northeast Regional Office at

- 1 -

US Custom House 2nd & Chestnut St. 7th Fl. Philadelphia, Pa. 19106 as required under 28 CFR § 14.2. See, (Exhibit A). On August 23, 2022, the claims were denied. See, (Exhibit B). Mr. Hajati was then confined at the United States Penitentiary (USP) satellite camp facility in Lewisburg, Pennsylvania at the time he pursued his FTCA administrative remedy, in question. Thus, He has plausibly alleged his satisfaction of procedural prerequisites to properly bring this civil action against the United States under the FTCA. "[P]rior to filing a FTCA action against the United States, a plaintiff must first have presented the claim to the appropriate federal agency and the claim must have been denied." Id. See, 28 U.S.C. § 2675. In addition, "a tort claim against the United States shall be presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." See, 28 U.S.C. § 2401 (b).

2. Mr. Hajati's colorable underlying federal law tort claims, clearly states a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915 and 42 U.S.C. § 1997, including sufficient enough facts to at least "plausibly" support this cause of action against the United States of America and its agencies (Collectively, "Defendants"), in their individual and official capacities, because the Defendants deliberately and intentionally failed to include the correct calculation of 4-months and 7-days or 130-days of pre-trial custody time serve credits towards Mr. Hajati's sentences and terms of supervised release, pursuant to 18 U.S.C. § 3585 (b)

and 3621 (b), and United States Sentencing Guidelines (U.S.S.G.) § 5G1.3, for the time he spent in an Albanian Detention Center while awaiting extradition and trial in the United States. In so stating his claims, Mr. Hajati describes how the Defendant United States's employees- the DOJ and BOP initially miscalculated his pre-trial time served credits he spent in official detention in Albania under 18 U.S.C. § 3585 (b), attempted to correct the error, but stopped short at merely documenting the error administratively and failed to advise the courts to correct the error where it would have made a difference in the out come of his sentence, length of incarceration, and supervised release terms. He also described in his claims how employees of the federal judicial system turned a blind - eye on the error by which they initially created or caused, but failed to correct the error, despite Mr. Hajati's request for the judicial system to do so. By doing so, the United States unlawfully extended Mr. Hajati's statutory maximum sentence or penalty and supervised release terms by 4-months and 7-days longer then mandated, and thus, question the legality of his sentence, confinement in the BOP, and his current term of supervised release.

3. Because of the "knowing" and "deliberate" unlawful delay and extention of Mr. Hajati's sentence and release, including terms of supervised release, the United States's conduct caused tortious loss of Mr. Hajati's liberties and freedom, including intentional infliction of outrage, as well as, physical and emotional life long damages which rises to a level of liberty expectation to be free from cruel and unusual punishment as prohibited by the Eighth Amendment of the United States

- 3 -

Constitution and deprived of process where its due under the
Fourteenth Amendment. Mr. Hajati suffers and continues to suffers
from the United States's egregious actions in this respect.
Consequently, Mr. Hajati is seeking injunctive relief in the form
of an immediate exoneration from all offense of convictions,
including supervised release. Similarly, Mr. Hajati is seeking
monetary damages in the amount of Eighteen Million Dollars,
$ 18,000,000.00. Moreover, Mr. Hajati is seeking declaratory,
compensatory, nomial, and punitive damages - in an amount deems
necessary under the circumstances.

4. The court should appoint counsel and/or investigator or
both from either its pro bono panel, Criminal Justice Act, 18 U.S.
C. § 3006A, or from the Court's Informa Pauperis panel, 28 U.S.C.
§ 1915 (e)(1), as justice so requires.

## JUSIDICTION

5. Jurisdiction is proper under 28 U.S.C. §§§ 1331, 1332,
1346 (a) and (b), and Article III of the United States Constitution
, which provide in pertinent part:"the judicial Power shall extend to
all cases, in law and equity, arising under . . . the laws of the
United States. U.S. Const. Art. III, § 2, Cl. 1. Article III
arising under jurisdiction is broader than federal question
jurisdiction under [28 U.S.C. § 1331]. See, <u>Verlinden B. V. V.
Cent. Bank of Nigeria</u>, 461 U.S. 480, 495, 103 S.ct. 1962, 76 L.ed
2d 81 (1983). Jurisdiction is also proper in this matter under
42 U.S.C. § 1983, 85.

## VENUE

- 4 -

6. Venue is proper here in the District of Connecticut under 28 U.S.C. § 1391 (b)(2) and (e), because, inter alia, a substantial part of the events or omissions, in question, given rise to the underlying tort claims occurred within and around this district, including the connected diversity district in and around Lewisburg, Pa.

## PARTIES INVOLVED

7. At all times relevant hereto, Mr. Hajati is the Claimant named in the above entitled style and number caption. He shares dual citizenship between Albania and the United States. He was a federal prisoner confined in the DOJ's BOP under the custodial auspices of the United States Penitentiary (USP) satellite camp facility at Lewisburg, Pa. serving a 48-month term of imprisonment imposed  by the United States District Court for the District of Connecticut on June 24, 2020,followed by a 5-year term of supervised release. The Honorable Robert N. Chatigny, Judge, presided. On November 21, 2020, Mr. Hajati was committed into the BOP via self - surrender to commence service of his sentence. After being assigned to USP Lewisburg camp facility to serve out his sentence, he was released from custody on  March 9, 2022, and since then commenced service of pre-release custody and soon  the 5-year term of supervised release.

8. At all times relevant hereto, Defendant, United States of America, obtained absolute authority and control - directly and/or indirectly over the decision making process of its employees named in the complaint, and provided guidelines and guidance specifically to the U.S. Marshal Services, DOJ, and BOP

- 5 -

during Mr. Hajati's pre-trial detention, confinement, and incarceration, and knew or should have known of the tortious actions of these other Defendants against Mr. Hajati, and are being sued in its official capacity under the FTCA, because of its employees' negligence and debliberate indifference to Mr. Hajati's liberty and freedom in this respect.

9. At all times relevant hereto, Defendant, former Attorney General Williams Barr, was an active agent of the United States, who set in office or was the chair, if you will, of the DOJ during the period upon which the tortious conduct was inflicedted against Mr. Hajati in this case. He is being sued in his individual and official capacity. He was made aware of Mr. Hajati's situation, but failed to see that the error in his sentence calculation was corrected, despite being responsible for, inter alia, the oversight of the BOP at the time the tortious actions took place against Mr. Hajati.

10. At all times relevant hereto, Defendant, Merrick Garland, is the active agent  of the United States as United States Attorney General and the successor of Defendant Barr since late 2022. He is being sued in his individual and official capacity. He oversees the daily functions of the DOJ as of date or since he took office. He issues directives and guidance to the other Defendants to follow or adopt and creates his own policies for them to follow which governs the tortious conduct and Eighth and Fourteenth Amendments violations against Mr. Hajati. Despite his power and being made aware of Mr. Hajati's situation, Defendant, Garland has failed to correct the sentencing error.

11. At all times relevant hereto, Defendant, Michael Carvajal, was an active agent of the United States who set in office or was the chair, if you will, of the BOP at the time Defendant Barr was in office and during the time the tortious conduct occurred against Mr. Hajati. He is being sued in his individual and official capacity. He followed the adopted and created policies of Defendaants Barr and the United States by which to operate the BOP. Despite his power and being made aware of Mr. Hajati's situation, Defendant Carvajal failed to correct the sentencing error.

12. At all times relevant hereto, Defendant, Collette Peters, is an active agent of the United States, as the NEW Director of the BOP and successor of Defendant Carvajal. She oversees the daily functioning of the BOP. She follows the directives and guidance of Defendant Garland and his adopted and created policies by which to operate the BOP. She is being sued in her individual and official and official capacity. Despite her power and being made aware of Mr. Hajati's situation, Defendant Peters has failed to correct the sentencing error.

13. At all times relevant hereto, Defendant Radm S. Spaulding is an active agent of the United States, as Warden of Lewisburg USP prison complex, including its satellite camp facility. He is being sued in his individual and official capacity. He could have, but did not, order the pre-trial credits time, in question, to be awarded to Mr. Hajati.

14. At all times relevant hereto, Defendants H. Rick and Vargeson is/was Mr. Hajati's Case Managers during the time the tortious conduct occurred against Mr. Hajati. They could have, but

did not, order the pre-trial time served credits, in question, and award them to Mr. Hajati. They are being sued in their individuals and official capacities.

15. At all times relevant hereto, Defendant, Kisten Moran, Esq. was the U.S. Probation Officer assigned to prepare Mr. Hajati's presentencing investigation report, who could have, but intentionally did not, advised the court that Mr. Hajati was not serving the 3-year term of supervised release imposed by Judge Thompson at the time the instant offense occurred in Judge Chatigny's case. He is being sued in his individual and/or official capacity.

16. At all times relevant hereto, Defendant, David T. Huang, Esq., was the lead AUSA assigned to represent the case, who could have, but intentionally did not, advise the court that Mr. Hajati was not serving the 3-year term of supervised release imposed by Judge Thompson, at the time the offense occurred in Judge Chatigny's case. He is being sued in his individual and/or official capacity.

17. At all times relevant hereto, Defendant, Judge Thompson presided over the first case, who could have, but intentionally did not apply the 4-months and 7-days worth of pre-trial custody time served credits for the time Mr. Hajati spent in Albania Detention Center, awaiting extradition to the United States. Judge Thompson knew or should have known that Mr. Hajati was entitled to such relief. He is being sued in his individual and/or official capacity.

18. At all times relevant hereto, Defendant, Judge Chatigny presided over the second case, who could have, but intentionally did not apply the 4-months and 7-days worth of pre-trial custody

time served credits for the time Mr. Hajati spent in Albania
Detention Center awaiting extradition to the United States, and
who should not have, but intentionally did, imposed a 2-point
increase upon Mr. Hajati's criminal history category under U.S.S.G.
§ 5G1.3 and 4A1.1. He is being sued in his individual and/or
official capacity.

## PLAUSIBLE FACTUAL BASIS

19. As mentioned earlier in the above summary, the thrust of
the tortious conduct and Constitutional violations carried out
against Mr. Hajati by the United States and its employees involved
Defendants interconnections and interrelations between three distinct
sovereignties and jursdictions : Tirane, Albania, Danbury,
Pennsylvania, and Lewisburg, Pennsylvania - collectively in a
"diverse" chronological order. Operating under the auspices of the
United States each one of these sovereignties could inherent
subject matter jurisdiction under the circumstances in this
matter.

20. On February 11, 2009, Mr. Hajati was charged in the
United States District Court of Connecticut with conspiracy to
commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. On
March 17, 2009, he was arrested in Albania and detained in prison
# 302 Detention Center in Tirane, Albania. On July 25, 2009, the
U.S. Marshal Services filed a writ of habeas corpus ad prosequendum
for   Mr. Hajati to be extradited from Albania to the United
States to face or address the wire fraud charges in person. He
stayed detained in prison # 302 in Albania for a total of

4-months and 7-days from March 17, 2009 to July 29, 2009, before
being extradited to the United States. On July 29, 2009, Mr.
Hajati was awarded released on bond pending the outcome of the wire
fraud related charges by the United States District Court in
Hartford, Connecticut.

21. On August 3, 2009, Mr. Hajati appeared before the United
States District Court of Connecticut and pled guilty as charged in
criminal case number 09CR35. On August 4, 2015, Mr. Hajati was
sentenced to a 1-year and 1-day term of imprisonment, to be
served in the BOP, followed by a 3-year term of supervised release.
Mr. Hajati was not awarded pre-trial custody credit for time he
spent in prsion # 302 awaiting extradiction to the United States.
The Honorable, Alvin W. Thompson, Judge presided. On October 1,
2015, Mr. Hajati was committed into the BOP via self - surrender
to commence service of his sentence. Mr. Hajati was released from
custody on August 9, 2016 and then commenced service of his 3-
year term of supervised release.

22. On July 1, 2019, Mr. Hajati was charged in another
offense for allegedly committing wire fraud in violation of
18 U.S.C. §§ 1343 and 1349, and for violating his 3-year term of
supervised release imposed by Judge Thompson as a result of the
instant new offense. On December 20, 2019, Mr. Hajati appeared
before the United States District Court for Connecticut and once
again pled guilty as charged to an informational complaint. On
June 24, 2020. Mr. Hajati was sentenced to 27-months for
purportedly violating Judge Thompson's 3-year imposed term of
supervised release to run consecutively to a 48-month sentence,

following by a 5-year term of supervised release - to run concurrently with the 3-year term of supervised release imposed by Judge Thompson. The Honorable, Robert N. Chatigny, Judge, presided. Judge Chatigny's 48-month sentence, included, in part, a 2-point increase in Mr. Hajati's criminal history category from II to III under U.S.S.G. § 4A1.1, based on the premise that he was still serving the 3-year term of supervised release imposed by Judge Thompson at the time of the instant offense before Judge Chatigny.

23. On November 27, 2020, Mr. Hajati returned to the BOP to commence service of his new federal 48-month consecutive sentences imposed by Judge Chatigny. Upon arrival in the BOP, Mr. Hajati notice via his Sentencing Monitoring Computation Data advisory that his 48-month sentence and 5-year term of supervised release were extended to at least an additional 6-months, due to the misculation of the 4-months and 7-days of time served, he should have been, but was not, credited from being detained in the Albanain Detention Center. Had Judge Thompson credited Mr. Hajati with the time - served credit he spent in custody in Albania, he would not have been serving a 3-year term of supervised release when he was charged in Judge Chatigny's case, and thus, Judge Chatigny would not have sentenced him as if he was still on supervised release.

24. On January 1, 2021, Mr. Hajati executed the required exhaustion of an informal resolution BP-8 administrative remedy attempt in the BOP pursuant to Program Statement (PS) 1330.18, seeking the award of the 4-months and 7-days time served credit

owed to him from March 17, 2009 to July 25, 2009, and have that time credited towards his 48 month sentence under 18 U.S.C. § 3582 (b) and U.S.S.G. § 5G1.3 - since he was not on supervised release at the time he allegedly committed the instant offense in Judge Chatigny's case. On February 4, 2021, the BOP "[con]ceded" that Mr. Hajati should have been credited with such time under 18 U.S.C. § 3582 (b) respectively.

25. On April 22, 2021, Mr. Hajati filed a motion to vacate his sentence imposed in Judge Chatigny's court pursuant to 28 U.S.C. § 2255, seeking to have the U.S.S.G. § 4A1.1 2-point enhanced criminal history category reduced from III to II, and to have the supervised release or probation violation vacated - all as a result of not actually being credited for the 4-months and 7-days time served credits for time he spent in Albania, but to no avail on August 24, 2021, when Judge Chatigny denied the motion. Neither the United States, the DOJ, nor BOP employees or named Defendants attempted to have Judge Chatigny correct the procedural or structural error despite Mr. Hajati's repeated requests for them to do so.

26. As a direct and proximate cause of the Defendants' tortious conduct and/or negligence and deliberate indifference, as described above (in their individuals and/or official capacities) Mr. Hajati have made a colorable prima facie showing or plausible enough facts to state a claim for damages and injuries - entitling him to injunctive relief, including discharge from his offense of conviction; compensatory, declaratory, punitive, nomial, and monetary damages. As such, Mr. Hajati is seeking a demanding

- 12 -

judgment, jointly and severely against all opposing Defendants in this respect named above to him in a reward of $ 18 Million dollars , interest and costs, or as the court deems necessary under the circumstances.

## COUNT I.
(Civil Conspiracy)

27. Mr. Hajati hereby realleges the tortious actions and Eighth and Fourteenth Amendments violations imposed against him by the named Defendants as set forth in paragraphs 1-26 above. Accordingly, the Defendants' actions and omissions (in their individuals and official capacities or both), constitutes the violation of State, Common Law, Common Wealth, and Federal statutory prohibition against tortious civil conspiracy, including the violation of Mr. Hajati's Eighth Amendment rights to be free from cruel and unusual punishment and Fourteenth Amendment rights from being deprived of process where its due. Expressed another way, the Defendants agreed, conspired, and had an expressed or implied agreement and understanding in furtherance of the agreement between themselves and others known and unknown to intentionally be deliberate indifference to Mr. Hajati's liberty and freedom. In doing so, the Defendants breached their duties to protect Mr. Hajati while he was in their custody and while currently on supervised release, in their individuals and official capacities.

28. Under Connecticut law, civil conspiracy is not an independent cause of action. "Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself . . . Thus, to state a claim of civil

conspiracy must be joined with an allegation of a substantive tort."
See, <u>Macomber V. Travelers Prop. & Causalty Corp.</u>, 277 Conn. 617,
636, 894 A.2d 240 (2006). To succeed on a claim of civil conspiracy,
a plaintiff must prove the following elements : 1) a combination
between two or more persons; 2) to do a criminal or an unlawful act
or a lawful act by criminal or unlawful means; 3) an act done by one
or more of the conspiractors pursuant to the scheme and in
furtherance of the object; and 4) which act results in damage to the
plaintiff. id. at 635-36.

29. The purpose of a civil conspiracy claim is to impose
liability on all those who agreed to join the conspiracy. By
joining, the members become legally responsible for the tortious
acts taken in furtherance of the object of the conspiracy,
including actions taken by co-conspirators. id. at 636. See, Also,
<u>Noll V. Harfod Roman Catholic Dioceasn Corp.</u>, 2005 Conn. Super.
LEXIS 2093, 2005 WL 2130212, at *2 (Conn. Super. Ct. July 29, 2005)
("The benefit of . . . civil conspiracy to a plaintiff is not that
it creates liability where otherwise none might exist, but rather
it expands the universe of those potentially liable for the harm").
To say that individuals "join" a conspiracy, thereby exposing them
to liability, is to say that they agree to participate in some
manner, in the object of the conspiracy. See, <u>Macomber</u>, 277 Conn.
at 636. As explained by the Connecticut Supreme Court, implicit in
the purpose of imposing civil conspiracy liability, as well as in
the requirement that a plaintiff prove an underlying tort, "is the
notion that the co-conspirator be liable for the damages flowing
from the underlying tortious conduct to which the co-conspirator

- 14 -

agreed." Id.

30. Here, the "tort" by which Mr. Hajati bases his claim of civil conspiracy on is the Defendants, United States of America being liable for failing to protect him while confined in its custody, and while he is currently on supervised release. Mr. Hajati has described how the United States and each one of its employees - named Defendants "individually" joined the conspiracy and involved themselves deliberately to further the common goals and objectives of the conspiracy. The DOJ and BOP, and Judicial system unlawfully breached their fiduciary duties in this respect, by conclusion with an expressed or implied agreement and understanding to extend and/or expand his sentence, incarceration, and supervised release terms. Its well established that prisoners, despite in custody, "retain some measure of the Constitutional protection." See, Ford V. McGinnis, 352 F.3d 582, 588 (2nd Cir. 2003). By clearly stating this colorable tortious claim, Mr. Hajati has demonstrated that the Defendants individually joined the conspiracy and acted deliberate indifferently and maliciously to his liberty and freedom, and thus, are liable together with violating his substantive and constitutional rights. Mr. Hajati suffers actual damages and injuries from the Defendants' actions in this respect.

31. "[T]o prove a 42 U.S.C. § 1983 conspiracy, on the other hand, a plaintiff must show : 1) an agreement between two or more state actors or between a state actor and a private entity; 2) to act in concert to inflict an unconstitutional injury; and 3) an overt act done in furtherance of that goal causing damages." See, Pangburn v. Culbertson, 200 F.3d 65, 72 (2nd Cir. 1999). Because

Mr. Hajati had a constitutional right to be protected by Defendants while in their custody at the time they "agreed" to conspire to maliciously extend and/or expand his incarceration and supervised release terms, the Defendants, therefore inflicted an unconstitutional injury upon Mr. Hajati. As such, Mr. Hajati has proved the necessary elements of a § 1983 conspiracy.

32. Moreover, Title 42 U.S.C. § 1985 prohibits two forms of conspiracy. The first part of the statute addresses conspiracies concerning "federal judicial proceedings" and the second part of the statute applies to conspiracies to obstruct the course of justice in state courts." See, Kush V. Rutledge, 460 U.S. 719, 724-25, 103 S.ct. 1483, 75 L.ed. 2d 413 (1983). In order to state a claim under § 1985, a plaintiff must alleged that : 1) the defendants were part of a conspiracy; 2) the purpose of the conspiracy was to deprive a person or class of person of the equal protection of the laws, or the equal privileges and immunities under the laws; 3) an overt act taken in furtherance of the conspiracy; and 4) an injury to his person or property, or deprivation of a right or privilege. See, Thomas V. Roach, 165 F.3d 137, 146-47 (2nd Cir. 1999).

33. Significantly here, of course, is the first part or prong of § 1985 statue - "conspiracies concerning the 'federal judicial proceedings'" involving Judges Thompson and Chatigny. Both Judges could have, but did not, follow the law and correctly credited Mr. Hajati with the 4-months and 7-days worth of pre-trial time served credits he earned while detained in Albania Detention Center awaiting extradiction to the Unite States, as required under

18 U.S.C. § 3585 (b), just as the BOP agreed to credit Mr. Hajati with, but to no avail. When Judge Chatigny denied Mr. Hajati's motion to correct the error in applying the 2-point enhancement upon his criminal history category for allegedly being on supervised release imposed by Judge Thompson, Judge Chatigny deliberately and maliciously denied Mr. Hajati access to the court, or deprived him of his liberty and freedom by unlawfully extending and expanding his sentence 4-months and 7-days longer then required. See, Lewis V. Cassey, 518 U.S. 343, 350, 116 S.ct. 2174, 135 L.ed. 2d 606 (1996). To state a claim for denial of access to the courts, the plaintiff must demonstrates that the defendants acted deliberately and maliciously and that he suffered an actual injury. See, Lewis, 518 U.S. at 353.

34. Taken together as a whole, Mr. Hajati has demonstrated plausible enough facts to state a claim of tortious civil conspiracy committed by the Defendants' actions, and have alleged the necessary elements of agreement and concert of their actions to prove his case. Accordingly, the court should enter summary judgment in Mr. Hajati's favor based on his "plausible" and "colorable" civil conspiracy claim. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is 'plausible' on its face." See, Ashcroft V. Lqbal, 556 U.S. 662, 678, 129 S.ct. 1937, 173 L.ed. 2d 868 (2009). To be plausible, the alleged factual content must allow the court to draw the reasonable inference that the defendants is "liable" for the misconduct alleged." See, e.g. Matson V. Bd. of Educ. of City, Sch. Dist. of NY, 631 F.3d 57, 63 (2nd Cir. 2011)(quoting, Ashcroft

V. Lqbal, 556 U.S. at 678). While "detained factual allegations" are unnecessary and unexpected, the court must be able to "infer more than the mere possibility of misconduct."Lqbal, 556 U.S. at 678-679. That said, given the content of the factual allegations provided herein by Mr. Hajati, the court is able to infer more than the mere possibility of the Defendants' misconduct in this case, entitling his pleadings to relief.

COUNT II.<br>(Bivens' Eighth Amendment Deliberate Indifference)

35. Mr. Hajati hereby realleges the tortious actions and Eighth Amendment violation imposed against him by the named Defendants as set forth in paragraph 1-34 above. Accordingly, the Defendants' actions (in their individuals and official capacities), constituties the violation of State, Common Law, Commonwealth, and Federal statutory prohibition against Mr. Hajati to be free from cruel and unusual punishment via deliberate indifference, as explained in Bivens V. Six Unknown Named Narcotic Agents, 403 U.S. 388, 91 S.ct. 1999, 29 L.ed. 2d 619 (1971).

36. A Bivens' claim under 28 U.S.C. § 1331 (a) is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983. See, Chin V. Bowen, 833 F.2d 21, 24 (2nd Cir. 1987)(holding that § 1983 concepts of state action apply in determining whether action was taken 'under color of federal law' for Bivens purpose). The Bivens cause of action "is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." Lqbal, 556 U.S. at 677. The two elements of a Bivens' claim are : 1) a defendant acted

under color of federal law to, 2) deprive plaintiff of a constitutional right. See, Tavarez V. Reno, 54 F.3d 109, 110 (2nd Cir. 1995). Thus, a Bivens' claim may only be brought against federal officials or individuals who have acted under color of federal law. Bivens, 403 U.S. at 397. In a Bivens' action a plaintiff must allege that the individual defendant was personally involved in the constitutional violation. Lqbal, 129 S.ct. at 1948. ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government - official defendant, through the official's own individual actions, has violated the Constitution"); Thomas V. Aschroft, 470 F.3d 491, 496 ( 2nd Cir. 2006)(In Bivens' actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation").

37. Mr. Hajati's Bivens claim as described above justify damage - recovery under Bivens. See, e.g. Davis V. Passman, 442 U.S. 228, 248-249, 99 S.ct. 2264, 60 L.ed. 2d 846 (1979)(Allowing Bivens claim seeking  money - damages for violation of the Due Process Clause of the Fifth Amendment). Therefore, Mr. Hajati's Eighth Amendment cruel and unusual punishment and Fourteenth Amendment due process claims, including the Defendants' deliberate indifference to protect him while in their custody in federal prison should prevail under Bivens in this  respect. The Supreme Court held that the Eighth Amendment prevents prison official from acting with deliberate indifference towards prisoners. See, Estelle V. Gamble, 429 U.S. 97, 104, 92 S.ct. 285, 50 L.ed. 2d 251 (1976).

## COUNT III.
### (Tort Violations)

38. Mr. Hajati hereby realleges the tortious actions and Eighth and Fourteenth    Amendments violations imposed against him by the named Defendants as set forth in paragraph 1-37 above.Accordingly, the Defendants' actions (in their individuals and official capacities or both), constitutes the violation of State, Common Law, Commonwealth, and Federal statutory and Constitutional prohibition against tortious actions.

39. Mr. Hajati tort claims violations are best understood in this respect when stored into two categories : 1) "pure" FTCA claims, and 2) "mixed" FTCA and state claims. Id. That said, Mr. Hajati's FTCA claims are "pure," because they are leveled exclusively against the United States and its employees and are comprised in counts I and II above, including the plausible factual basis demonstrated above which clearly states a colorable tort claim of federal law. Conversely, Mr. Hajati's "mixed" FTCA and state law claims are also comprised in counts I and II above, because each one of these counts underlying contents contains two separate calims, one under the FTCA against the United States, the other under diversity of the State, Common Law, and Commonwealth of Danburg, Ct., and Lewisburg, Pa. The Defendants had many meaningful opportunities to correct the tortious and constitutional errors, but intentionally and maliciously failed to do so.

40. Because Mr. Hajati properly exhaused his administrative remedy to the appropriate agency before filing this tort-Bivens

complaint, as required under 28 U.S.C. § 2675 (a), the case is now
ripe for jurisdictional review, and is not barred without
jurisdiction to where the Defendants federal sovereign immunity is
waive under the FTCA. See, 28 U.S.C. § 1346 (b); United States V.
Orleans, 425 U.S. 807, 813, 96 S.ct. 1971, 48 L.ed. 2d 390 (1976).
Accordingly, Mr. Hajati has satisfied his burden of showing he
exhausted his FTCA claims.

## PRAYERS FOR RELIEF

A. On the claims stated in paragraphs 1-40, Mr. Hajati
respectfully asks the court to enter judgment against Defendant,
United States of America in its official capacity, and seeks
damages as described above.

B. On the claims stated in paragraphs 1-40, Mr. Hajati
respectfully asks the court to enter judgment against Defendants
official employees of the United States as described above and hold
them all liable (in their individuals and/or official capacities),
for injunctive relief (discharged from offense of conviction),
punitive, declaratory, compensatory, nomial, and monetary damages.

## DEMOAND FOR JURY TRIAL
### AND
## APPOINUTMENT OF COUNSEL

Mr. Hajati demands a jury trial for his tortious and
Constitutional claims against all Defenddants named in this civil
suit, and he respectfully request for an appointment of counsel,
as justice so requires, from either the court's pro bono panel, or
Criminal Justice Act, 18 U.S.C. § 3006A, or In forma Pauperis

panel, 28 U.S.C. § 1915 (e)(1).

## DECLARATION

I, _Geage Hajati_ , hereby being duly sworn, deposes, and say that I declare under penalty of perjury that the above statement of facts are true and correct to the best of my knowledge. 28 U.S.C. § 1746.

Respectfully Submitted

George Najati, pro se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _31_ day of January, 2023, the foregoing civil complaint was mailed for consideration.

Respectfully Submitted

George Hajati, pro se
28 Glenview Drive
Cromwell, Ct. 06416

CC :

US Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

*Designation and Sentence Computation Center*

*U.S. Armed Forces Reserve Complex*
*346 Marine Forces Drive*
*Grand Prairie, Texas 75051*

February 4, 2021

MEMORANDUM FOR FILE

FROM: Cynthia Bell, Operations Manager
Designation and Sentence Computation Center

SUBJECT: HAJATI, George
Register Number: 17852-014

This is in response to your request regarding the application of foreign jail credits in the case of the above subject.

Based on documents contained in the official records, inmate Hajati is authorized under Title 18 U.S.C. §3585(b), prior custody credit for time detained in Albania, from March 17, 2009, through July 24, 2009, the date he was extradited to the United States.

Please place this memorandum in the Judgment and Commitment file for verification of credit. If you have any questions, please contact the Designation and Sentence Computation Center at (972)595-3187.

ear

Exhibit A



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*Via Certified and Return Receipt Mail*

> *U.S. Custom House-7th Floor*
> *2nd & Chestnut Streets*
> *Philadelphia, PA 19106*

August 23, 2022

Mr. George Hajati
28 Glenview Drive
Cromwell, CT 06416

     Re:   Administrative Claim No. TRT-NER-2022-03384
           Register No. 17852-014

Dear Mr. Hajati:

     Your Administrative Claim No. TRT-NER-2022-03384, properly received on March 14, 2022, has been considered for settlement as provided by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2672, under authority delegated to me by 28 C.F.R. § 543.30.  Damages are sought in the amount of $18,000,000.00 based on a personal injury claim. Specifically, you allege between August 2015, and March 2022, the Bureau of Prisons unlawfully delayed your release from custody.

     After review, we have decided to deny your claim because you have not alleged specific physical injuries actionable under the Federal Tort Claims Act 28 U.S.C. §§ 1346(b)(2), 2672.  In addition, constitutional claims are not cognizable under the FTCA. There is no evidence you experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee.

     If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this letter.

                             Sincerely,

                             Darrin Howard
                             Regional Counsel

cc:  RADM S. Spaulding, Warden, USP Lewisburg

Exhibit B



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

U.S. Custom House
2nd & Chestnut Streets - 7th Floor
Philadelphia, P.A. 19106

March 28, 2022

George Hajati, Reg. No. 17852-014
Drapelick Center
1095 Blue Hills Avenue
Bloomfield, CT   06002

Re:   Administrative Claim **Received March 14, 2022**
      Claim No. TRT-NER-2022-03384

Dear Mr. Hajati:

This will acknowledge receipt of your administrative claim for an alleged loss of personal property or personal injury suffered at USP Lewisburg.

Under the provisions of the applicable federal statutes, we have **six months from the date of receipt** to review, consider, and adjudicate your claim.

All correspondence regarding this claim should be addressed to Federal Bureau of Prisons, Northeast Regional Office, Room 701, U.S. Custom House, 2nd & Chestnut Street, Philadelphia, Pennsylvania 19106.  If the circumstances surrounding this claim change in any fashion, you should contact this office immediately.  Also, should your address change, you should contact this office in writing accordingly.

Sincerely,

Darrin Howard
Regional Counsel

Exhibit   C

Exhibit D

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROROVED OMB NO. 1105-0008 EXPIRES 5-31-05 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| U.S. Bureau Of Prison(BOP) USP Lewisburg (Satellite Camp) P.O. Box 2000 Lewisburg, Pa. 17837 | George Hayati 28 Glenview Dr Cromwell Ct 06416 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 09-24-1978 | 5. MARITAL STATUS Married | 6. DATE AND DAY OF ACCIDENT 8-4-15 thru 3-2022 | 7. TIME (A.M. OR P.M) real time |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

See, (Administrative remedy attachment, @ 3-5).

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side)

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

See, (Administrative remedy attachment, @ 7).

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
| N/A | N/A |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| N/A | $18 Million | N/A | $18 Million |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory 860 532 - 8181 | 14. DATE OF CLAIM 3-8-21 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 18 U.S.C.A. 287.) |

95-108
Previous editions not usable

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:*  The information requested is to be used in evaluating claims.
C. *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid".

**INSTRUCTIONS**

**Complete all items – Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF

  Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.  Many agencies have published supplemental regulations also.  If more than one agency is involved, please state each agency.

  The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.
  If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

  The amount claimed should be substantiated by competent evidence as follows:
  (a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT, THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

  (b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

  (c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

  (d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,
to Director, Torts Branch
  Civil Division
  U.S. Department of Justice
  Washington, DC  20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC   20503

**INSURANCE COVERAGE**

In order that subrogation claims be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15.   Do you carry accident insurance?  ☐ Yes, if yes give name and address of insurance company (*Number, street, city, State, and Zip Code*) and policy number.   ☐ No

N/A

16.   Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

N/A

17. If deductible, state amount

N/A

18.  If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (*It is necessary that you ascertain these facts*)

N/A

19. Do you carry public liability and property damage insurance?  ☐ Yes, If yes, give name and address of insurance carrier (*Number, street, city, State, and Zip Code*)  ☐ No

N/A

SF 95 (Rev. 7-85) BACK

**\* U.S. GOVERNMENT PRINTING OFFICE: 1989--241-175**

Goerge Hajati's Tort Claim Remedy                           March 9, 2022
Reg. No. 17852-014

## ADMINISTRATIVE REMEDY ATTACHMENT

   Pursuant to the Federal Tort Claim Act (FTCA), 28 U.S.C. §§ 1346 and 2672-
80 (1958), this administrative remedy attempt comes in the aftermath of the
damages and/or injuries which occurred as a result of the United States (U.S.),
and its agencies and personnel's (hereinafter, "in their individual and
official capacities") deliberate indifference or wrongful acts carried out
against my liberties and welfare. Based on the nature of the damages and
injuries, in question, the U.S. are not exempted from suit - by the exception
to tort liability claims.

   The specifics involves the U.S.'s unlawful and purposeful failure to
include the calculation of 4-months and 7-days or 130-days of pre-trial custody
time served credits towards my sentences and terms of supervised release,
pursuant to 18 U.S.C. §§ 3585 (b) and 3621 (b), and U.S.S.G. § 5G1.3 for the
time I spent in an Albanian Detention Center awaiting extradition and trial.
By doing so, the U.S. unlawfully extended my sentences and supervised release
terms to 4-months and 7-days longer than mandated, and thus, question the
legality of my confinement and/or underlying conviction - collectively
together in two separate cases, to the extent that I am/was unlawfully
delayed in prison for 21-months longer than mandated.

   Because of the "knowing" unlawful delay of my release from imprisonment
in both cases, the U.S.'s conduct caused intentional loss of my liberties,
including intentional infliction of outrage and emotional distress, as well,
as physical and emotional life - long damages. I suffered and continues to
suffers as a result of the U.S.'s egregious actions. Consequently, I am seeking
injunctive relief in the form of an immediate exoneration from all offense of
convictions, including supervised release. Similarly, I am seeking monetary
damages in the amount of $18 Million dollars. Moreover, I am seeking
declaratory and compensatory relief, and punitive damages - in an amount
deems necessary under the circumstances.

## RELEVANT FACTUAL BASIS

   At all times relevant hereto, I am and was an Albanian national, and

U.S. citizen, when on February 11, 2009, I was charged in the U.S. District Court of Connecticut with conspiring to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. On March 17, 2009, I was arrested in Albania and detained in the Prison # 302 Detention Center in Tirane, Albania. On July 25, 2009, the U.S. Marshal filed a writ of habeas corpus ad prosequendum or for me to be extradited from Albania to Connecticut to address the wire fraud charges in person. I stayed detained in Prison # 302 in Albania for a total of 4-months and 7-days from March 17, 2009 to July 29, 2009, before being extradited to the U.S. On July 29, 2009, I was awarded release on bond pending the outcome of the wire fraud related charges by the U.S. District Court in Hartford, Connecticut.

At all times relevant hereto, on August 3, 2009, I appeared before the U.S. District Court of Connecticut and pled guilty as charged in criminal case number 09CR35. On August 4, 2015, I was sentenced to a 1-year and 1-day term of imprisonment, to be served in the Bureau of Prison (BOP), followed by a 3-year term of supervised release. "I was not provided pre-custody credit for time I spent in Prison # 302 awaiting extradition." The Honorable, Alvin W. Thompson, Judge, presided. On October 1, 2015, I was committed into the BOP via self - surrender to commence service of my sentence. I was release from custody on August 9, 2016 and then commenced service of my 3-year term of supervised relase.

At all times relevant hereto, on July 1, 2019, I was charged in another offense for allegedly committing wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, and for violating my 3-year term of supervised release imposed by Judge Thompson as a result of the instant new offense. On December 20, 2019, I appeared before the U.S. District Court for Connecticut and once again pled guilty as charged to an information complaint. On June 24, 2020, I was sentenced to 27-months on the wire fraud charges, and 21-months for purportedly violating Judge Thompson's 3-year imposed term of supervised release to run consecutively as a 48-month sentence, followed by a 5-year term of supervised release - to run concurrently with the 3-year term of supervised release imposed by Judge Thompson. The Honorable, Robert N. Chatigny, Judge, presided. Judge Chatigny's 48 month sentence, included, in part, a 2-point increase in my criminal history category from II to III under U.S.S.G. § 4A1.1, based on the premise that I was still serving the 3-year term of supervised release imposed by Judge Thompson at the time of the instant offense before Judge

Chatigny.

At all times relevant hereto, on November 27, 2020, I returned to the BOP to commence serive of my new federal 48-month consecutive sentences imposed by Judge Chatigny. Upon arrival in the BOP, I notice via my Sentencing Monitoring Computation Data advisory that my 48-month sentence and 5-year term of supervised release were extended to at least an additional 6-months, due to the miscalculation of the 4-months and 7-days of time served, I should have been, but was not, credited from being detained in the Albanian Detention Center. Had Judge Thompson credited me with the time-served credit I spent in custody in Albania, I would not have been purportedly serving a 3-year term of supervised release when I was charged in Judge Chatigny's case, and thus, Judge Chatigny would not have sentenced me as if I was still on supervised release.

At all times relevant hereto, on January 1, 2021, I executed the exhaustion of an informal resolutional BP-8 administrative remedy attempt in the BOP, pursuant to PS 1330.18, seeking the 4-months and 7-days time served credit owed to me from March 17, 2009 to July 25, 2009, and have that time credited towards my 48-month sentence under 18 U.S.C. § 3582 (b) and U.S.S.G. § 5G1.3 - since I was not on supervised release at the time I allegedly committed the instant offense in Judge Chatigny's case. See, (Exhibit A). On February 4, 2021, the BOP "conceded" that I should have been credited with such time under 18 U.S.C. § 3585 (b). See, (Exhibit B).

At all times relevant hereto, on April 22, 2021, I filed a motion to vacate my conviction and sentence imposed in Judge Chatigny's court, pursuant to 28 U.S.C. § 2255, seeking to have the U.S.S.G. § 4A1.1 2-point enhanced criminal history category reduced from III to II, and to have the supervised release or probation violation vacated - all as a result of not actually being credited for the 4-months and 7-days time served I spent in Albania, but to no avail on August 24, 2021, when Judge Chatigny denied the motion. See, (Exhibit C).

## THE PARTIES INVOLVED

At all times relevant hereto, I am the Claimant who is bringing this administrative remedy seeking damages for the opposing parties malicious

actions and inactions.

At all times relevant hereto, Kristen Moran, Esq., was the U.S. Probation Officer assigned to prepare my presentencing investigation report, who could have, but intentionally did not, advise the court that I was not serving the 3-year term of supervised release imposed by Judge Thompson, at the time the offense occurred in Judge Chatigny's case.

At all times relevant hereto, David T. Huang, Esq., was the lead Assistant U.S. Attorney assigned to present the case, who could have, but intentionally did not, advise the court that I was not serving the 3-year term of supervised release imposed by Judge Thompson, at the time the offense occurred in Judge Chatigny's case.

At all times relevant hereto, Judge Thompson presided over the first case, who could have, but intentionally failed to apply the 4-months and 7-days worth of pre-custody time served credits for the time I spent in Albania Detention Center, awaiting extradition to the U.S. Judge Thompson knew or should have known that I was entitled to such credits.

At all times relevant hereto, Judge Chatigny presided over the second case, who could have, but intentionally failed to apply the 4-months and 7-days worth of pre-custody time served credits for the time I spent in Albania Detention Center, awaiting extradition to the U.S., and who should not have, but intentionally did, imposed a 2-point increase on my criminal history category under U.S.S.G. § 4A1.1.

At all times relevant hereto, the U.S. BOP and its personnel, albeit, conceded that the time-served credits, in question, were warranted, could have, but intentionally failed to act sooner to resolve the miscalculation of my credits. Which, in turn, could have shorten my sentence and ensure my release earlier in a due and proper time frame.

## CIVIL CONSPIRACY

At all times relevant hereto, the opposing parties did not act alone. Rather, they collectively agreed, conspired, and had an expressed or implied agreement and understanding together and between themselves, and others known and unknown - connection with a joint intentional deliberate indifference to harm me in this matter, and by doing so, breached their duties in their

individual and official capacities.

## NATURE AND EXTENT OF INJURIES

At all times relevant hereto, the nature and extent of the injuries I incurred includes, but are not limited to : 1) the loss of my liberties, by the erroneous delay in releasing me repeatedly in a timely fashion in both cases, and in violation of my constitutional and substantial rights by not releasing me after more then the sentencing mandate required, and 2) infliction of outrage and emotional distress - resulting to physical, emotional, and psychological damages.

## RELIEF SOUGHT

As a direct and proximate cause of the parties' actions and/or inactions (in their individual and official capacities), including conspiracy, I have made a prima facie showing of damages and injuries, and is entitled to injunctive relief, including a discharge from the offense of convictions. I have also incurred compensatory, declaratory, and punitive damages and should be awarded for such extreme harms. As a result, I demand judgment, jointly, and severally against [all] the opposing parties named above for the reward of $18 Million dollars, or as this administrative deems necessary under the circumstances.

## DECLARATION

I HEREBY DECLARE under penalty of perjury that the above statement of facts are true and correct to the best of my knowledge. 28 U.S.C. § 1746.

Dated : _3-8-22_    ; Signature : _____
George Najati

Goerge Hajati's Tort Claim Remedy                                    March 9, 2022
Reg. No. 17852-014

## ADMINISTRATIVE REMEDY ATTACHMENT

Pursuant to the Federal Tort Claim Act (FTCA), 28 U.S.C. §§ 1346 and 2672-80 (1958), this administrative remedy attempt comes in the aftermath of the damages and/or injuries which occurred as a result of the United States (U.S.), and its agencies and personnel's (hereinafter, "in their individual and official capacities") deliberate indifference or wrongful acts carried out against my liberties and welfare. Based on the nature of the damages and injuries, in question, the U.S. are not exempted from suit - by the exception to tort liability claims.

The specifics involves the U.S.'s unlawful and purposeful failure to include the calculation of 4-months and 7-days or 130-days of pre-trial custody time served credits towards my sentences and terms of supervised release, pursuant to 18 U.S.C. §§ 3585 (b) and 3621 (b), and U.S.S.G. § 5G1.3 for the time I spent in an Albanian Detention Center awaiting extradition and trial. By doing so, the U.S. unlawfully extended my sentences and supervised release terms to 4-months and 7-days longer than mandated, and thus, question the legality of my confinement and/or underlying conviction - collectively together in two separate cases, to the extent that I am/was unlawfully delayed in prison for 21-months longer than mandated.

Because of the "knowing" unlawful delay of my release from imprisonment in both cases, the U.S.'s conduct caused intentional loss of my liberties, including intentional infliction of outrage and emotional distress, as well, as physical and emotional life - long damages. I suffered and continues to suffers as a result of the U.S.'s egregious actions. Consequently, I am seeking injunctive relief in the form of an immediate exoneration from all offense of convictions, including supervised release. Similarly, I am seeking monetary damages in the amount of $18 Million dollars. Moreover, I am seeking declaratory and compensatory relief, and punitive damages - in an amount deems necessary under the circumstances.

## RELEVANT FACTUAL BASIS

At all times relevant hereto, I am and was an Albanian national, and

Page 3

U.S. citizen, when on February 11, 2009, I was charged in the U.S. District Court of Connecticut with conspiring to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. On March 17, 2009, I was arrested in Albania and detained in the Prison # 302 Detention Center in Tirane, Albania. On July 25, 2009, the U.S. Marshal filed a writ of habeas corpus ad prosequendum or for me to be extradited from Albania to Connecticut to address the wire fraud charges in person. I stayed detained in Prison # 302 in Albania for a total of 4-months and 7-days from March 17, 2009 to July 29, 2009, before being extradited to the U.S. On July 29, 2009, I was awarded release on bond pending the outcome of the wire fraud related charges by the U.S. District Court in Hartford, Connecticut.

At all times relevant hereto, on August 3, 2009, I appeared before the U.S. District Court of Connecticut and pled guilty as charged in criminal case number 09CR35. On August 4, 2015, I was sentenced to a 1-year and 1-day term of imprisonment, to be served in the Bureau of Prison (BOP), followed by a 3-year term of supervised release. "I was not provided pre-custody credit for time I spent in Prison # 302 awaiting extradition." The Honorable, Alvin W. Thompson, Judge, presided. On October 1, 2015, I was committed into the BOP via self - surrender to commence service of my sentence. I was release from custody on August 9, 2016 and then commenced service of my 3-year term of supervised relase.

At all times relevant hereto, on July 1, 2019, I was charged in another offense for allegedly committing wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, and for violating my 3-year term of supervised release imposed by Judge Thompson as a result of the instant new offense. On December 20, 2019, I appeared before the U.S. District Court for Connecticut and once again pled guilty as charged to an information complaint. On June 24, 2020, I was sentenced to 27-months on the wire fraud charges, and 21-months for purportedly violating Judge Thompson's 3-year imposed term of supervised release to run consecutively as a 48-month sentence, followed by a 5-year term of supervised release - to run concurrently with the 3-year term of supervised release imposed by Judge Thompson. The Honorable, Robert N. Chatigny, Judge, presided. Judge Chatigny's 48 month sentence, included, in part, a 2-point increase in my criminal history category from II to III under U.S.S.G. § 4A1.1, based on the premise that I was still serving the 3-year term of supervised release imposed by Judge Thompson at the time of the instant offense before Judge

Chatigny.

At all times relevant hereto, on November 27, 2020, I returned to the BOP to commence serive of my new federal 48-month consecutive sentences imposed by Judge Chatigny. Upon arrival in the BOP, I notice via my Sentencing Monitoring Computation Data advisory that my 48-month sentence and 5-year term of supervised release were extended to at least an additional 6-months, due to the miscalculation of the 4-months and 7-days of time served, I should have been, but was not, credited from being detained in the Albanian Detention Center. Had Judge Thompson credited me with the time-served credit I spent in custody in Albania, I would not have been purportedly serving a 3-year term of supervised release when I was charged in Judge Chatigny's case, and thus, Judge Chatigny would not have sentenced me as if I was still on supervised release.

At all times relevant hereto, on January 1, 2021, I executed the exhaustion of an informal resolutional BP-8 administrative remedy attempt in the BOP, pursuant to PS 1330.18, seeking the 4-months and 7-days time served credit owed to me from March 17, 2009 to July 25, 2009, and have that time credited towards my 48-month sentence under 18 U.S.C. § 3582 (b) and U.S.S.G. § 5G1.3 - since I was not on supervised release at the time I allegedly committed the instant offense in Judge Chatigny's case. See, (Exhibit A). On February 4, 2021, the BOP "conceded" that I should have been credited with such time under 18 U.S.C. § 3585 (b). See, (Exhibit B).

At all times relevant hereto, on April 22, 2021, I filed a motion to vacate my conviction and sentence imposed in Judge Chatigny's court, pursuant to 28 U.S.C. § 2255, seeking to have the U.S.S.G. § 4A1.1 2-point enhanced criminal history category reduced from III to II, and to have the supervised release or probation violation vacated - all as a result of not actually being credited for the 4-months and 7-days time served I spent in Albania, but to no avail on August 24, 2021, when Judge Chatigny denied the motion. See, (Exhibit C).

## THE PARTIES INVOLVED

At all times relevant hereto, I am the Claimant who is bringing this administrative remedy seeking damages for the opposing parties malicious

actions and inactions.

At all times relevant hereto, Kristen Moran, Esq., was the U.S. Probation Officer assigned to prepare my presentencing investigation report, who could have, but intentionally did not, advise the court that I was not serving the 3-year term of supervised release imposed by Judge Thompson, at the time the offense occurred in Judge Chatigny's case.

At all times relevant hereto, David T. Huang, Esq., was the lead Assistant U.S. Attorney assigned to present the case, who could have, but intentionally did not, advise the court that I was not serving the 3-year term of supervised release imposed by Judge Thompson, at the time the offense occurred in Judge Chatigny's case.

At all times relevant hereto, Judge Thompson presided over the first case, who could have, but intentionally failed to apply the 4-months and 7-days worth of pre-custody time served credits for the time I spent in Albania Detention Center, awaiting extradition to the U.S. Judge Thompson knew or should have known that I was entitled to such credits.

At all times relevant hereto, Judge Chatigny presided over the second case, who could have, but intentionally failed to apply the 4-months and 7-days worth of pre-custody time served credits for the time I spent in Albania Detention Center, awaiting extradition to the U.S., and who should not have, but intentionally did, imposed a 2-point increase on my criminal history category under U.S.S.G. § 4A1.1.

At all times relevant hereto, the U.S. BOP and its personnel, albeit, conceded that the time-served credits, in question, were warranted, could have, but intentionally failed to act sooner to resolve the miscalculation of my credits. Which, in turn, could have shorten my sentence and ensure my release earlier in a due and proper time frame.

## CIVIL CONSPIRACY

At all times relevant hereto, the opposing parties did not act alone. Rather, they collectively agreed, conspired, and had an expressed or implied agreement and understanding together and between themselves, and others known and unknown - connection with a joint intentional deliberate indifference to harm me in this matter, and by doing so, breached their duties in their

individual and official capacities.

## NATURE AND EXTENT OF INJURIES

At all times relevant hereto, the nature and extent of the injuries I incurred includes, but are not limited to : 1) the loss of my liberties, by the erroneous delay in releasing me repeatedly in a timely fashion in both cases, and in violation of my constitutional and substantial rights by not releasing me after more then the sentencing mandate required, and 2) infliction of outrage and emotional distress - resulting to physical, emotional, and psychological damages.

## RELIEF SOUGHT

As a direct and proximate cause of the parties' actions and/or inactions (in their individual and official  capacities), including conspiracy, I have made a prima facie showing of damages and injuries, and is entitled to injunctive relief, including a discharge from the offense of convictions. I have also incurred compensatory, declaratory, and punitive damages and should be awarded for such extreme harms. As a result, I demand judgment, jointly, and severally against [all] the opposing parties named above for the reward of $18 Million dollars, or as this administrative deems necessary under the circumstances.

## DECLARATION

I HEREBY DECLARE under penalty of perjury that the above statement of facts are true and correct to the best of my knowledge. 28 U.S.C. § 1746.

Dated : *3-8-22*     ; Signature :     
George Hajati